UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILEY MAYS,

                    Plaintiff,                     Case No. 1:24-cv-944

v.                                                 Honorable Ray Kent

HEIDI WASHINGTON et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action initially brought by 16 state prisoners under 42 U.S.C. § 1983. By order entered September 13, 2024, to avoid the procedural difficulties that arise when multiple prisoner-plaintiffs join in filing a civil rights suit, the Court severed the one action into 16 separate but related actions and, to ensure that each case proceeded with only the claims of that plaintiff, the Court directed each plaintiff to file an amended complaint containing only the allegations relevant to that plaintiff's claims for relief. (ECF No. 3) This opinion addresses Plaintiff's amended complaint, which is his second attempt to state claims against these Defendants.

The group of 16 plaintiffs paid the entire filing fee. Because the joinder of all of the plaintiffs was permissible, the Court has not, and will not, impose an additional filing fee for this severed case. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Am. Compl., ECF No. 5, PageID.107.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§ 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all

proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

<u>**Discussion**</u>

**I.    Factual Allegations**

Plaintiff was incarcerated with the Michigan Department of Corrections (MDOC) when he initiated this action; however, during the pendency of this action, Plaintiff was released from

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

incarceration.[2] The events about which he complains occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following MDOC personnel: Director Heidi Washington; Deputy Director Jeremy Bush; and Mental Health Rights Specialist Sara Heydens. Plaintiff also sues the following ICF personnel: Warden John Davids; Deputy Warden Unknown Bonn; Assistant Deputy Wardens R. Brokaw and Jim Dunigan; Resident Unit Manager Unknown Luther; Prison Counselors Unknown Simon and Walton L. Smith; Psychiatrists Unknown Saad and Unknown Shafer; Psychologists Michelle Norton, Unknown Bookie, and Unknown Preston; Unit Chief David Maranka; and a catch-all category described as Unknown Staff-Corrections Officers. All Defendants are sued in their respective personal capacities.

Plaintiff's factual allegations, in their entirety, are as follows:

In July of 2023, I was sent to Ionia Correctional Facility where I was forced to be in segregation without having any tickets. This went on for nearly 3 months. I have mental illnesses and they held me in segr[e]gation longer [than] what they should according to law.

I was placed in the start program where I was subjected to more segr[e]gation like treatment. I made all the defendants aware of the effect this situation was having on my mental health. Once after I wrote grievances and started speaking out about my situation, officers started refusing to give me my food, refusing to allow me to clean my cell, refusing to allow me to take showers, and refusing to allow me to go outside.

This led to me having an episode in which I was hospitalized for cutting myself.

(Am. Compl., ECF No. 5, PageID.106.)

Plaintiff seeks $100,000.00 in damages "for what [he] had to endure and also as a punishment for [Defendants'] malicious acts. (*Id.*, PageID.107.)

---

[2]  *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=793413 (last visited Feb. 28, 2025).

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's allegations do not identify which of his constitutional rights were violated. Construing his allegations liberally, it appears that Plaintiff is raising an Eighth Amendment conditions-of-confinement claim regarding his initial stay in segregation, an Eighth Amendment conditions-of-confinement claim regarding his stay in the START program, a First Amendment retaliation claim, and, potentially, a Fourteenth Amendment due process claim regarding his placement into segregation and the START program.

### A.      Failure to Attribute Alleged Constitutional Violations to Specific Defendants

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, and a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants

6

were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff alleges that he was "forced to be in segregation." (Am. Compl., ECF No. 5, PageID.106.) Plaintiff also alleges that "[t]hey held [Plaintiff] in segregation longer [than] they should," and that he "was placed in the start program where [he] was subject to more segregation[-]like treatment." (*Id.*) However, Plaintiff fails to even mention any of the named Defendants in the body of his complaint. He does not say who forced him to be in segregation, who kept him there too long, or who placed him in the START program. The closest he comes to identifying the perpetrators is to describe them as "they." Plaintiff is a little bit more specific with regard to who refused to give him food, clean his cell, take a shower, or go outside: he identifies those state actors as "officers." (*Id.*) But none of the named Defendants are "officers." Liberally construing Plaintiff's complaint these "officers" may be included in the "Unknown Parties-Correction Officers" category. (*Id.*, PageID.105.)

Although Plaintiff's "they" might include some or all of the named Defendants, some or all of the Unknown Parties, or some combination of the named and unknown parties, that sort of "[s]ummary reference to a single, five-headed 'Defendants' [or 'they' or 'officials'] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir.

2011)). Therefore, Plaintiff's allegations, with regard to all of his claims, fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). For that reason alone, Plaintiff's amended complaint is properly dismissed for failure to state a claim upon which relief can be granted. Nonetheless, the Court will alternatively consider the merits as well.

### B.    Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment bars punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Not "every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id*. Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Rhodes*, 452 U.S. at 347. Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

For a prisoner to state an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate

indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010)

(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25,

35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The

deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511

U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that

he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S.

at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk

to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk

to inmate health or safety may be found free from liability if they responded reasonably to the risk,

even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Administrative Segregation

Plaintiff offers no detail regarding the conditions he faced during his three-month stay in

administrative segregation. Courts have held that placement in segregation is a routine discomfort

that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson

v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). And, the Sixth Circuit has

held that without a showing that basic human needs were not met, the denial of privileges as a

result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans

v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th

Cir. 2008).

Nonetheless, being exposed to the restrictive conditions of administrative segregation may

go beyond "routine discomfort" if the exposure is for a long duration. *See, e.g.*, *Lamb v. Howe*,

677 F. App'x 204, 209 (6th Cir. 2017) (noting that "[c]onditions-of-confinement cases are highly

fact-specific, but one guiding principle is that the length of exposure to the conditions is often

paramount" and "[i]n general, the severity and duration of deprivations are inversely proportional,

so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation while substantial deprivations of shelter, food, drinking water and sanitation may meet the standard despite a shorter duration" (internal quotation marks and citation omitted)); *see also Hutto v. Finney*, 437 U.S. 678, 686–86 (1978) (noting that "punitive isolation is not necessarily unconstitutional, but it may be, depending on the duration of the confinement and the conditions thereof . . . the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards" (internal quotation marks and citation omitted)). Without something more, Plaintiff's three-month period of routine discomfort in segregation does not pass the threshold. *See, e.g.*, *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) ("As a matter of law, [the prisoner]'s three months in segregation . . . does not offend contemporary notions of decency and does not constitute a violation of the [E]ighth [A]mendment.").

Accordingly, for these reasons, Plaintiff's claim that he endured the standard restrictions of MDOC administrative segregation for three months fails to state an Eighth Amendment conditions-of-confinement claim.

### 2.    START Program[3]

Plaintiff's allegations regarding the START program are also scant. All he offers regarding the conditions in the program is that they were "segregation like." (Am. Compl., ECF No. 5,

---

[3] It is the "Start Program's mission . . . [t]o provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the prisoner's positive adjustment, with the goal of reintegration into traditional general population." *Randall v. Washington*, No. 1:24-cv-344, 2024 WL 3158258, at *2 (W.D. Mich. June 25, 2024). Moreover, "the target population includes prisoners with serious mental illnesses, but only if those prisoners' behavior would warrant reclassification to administrative segregation." *Id.* Plaintiff alleges that he has "mental illnesses," (Am. Compl., ECF No. 5, PageID.106), but he does not describe the nature of those illnesses or how his mental illnesses impacted his behavior in the prison.

PageID.106.) Because Plaintiff provides nothing more, Plaintiff's Eighth Amendment claim relating to the START program fails for the same reason that Plaintiff's segregation claim failed.

### C.    Due Process

The Court construes Plaintiff's amended complaint to raise a Fourteenth Amendment due process claim regarding his placement into segregation and the START program.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

As an initial matter, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976). Further, the United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum*, 427 U.S. at 225.

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary

11

incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998);

*Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that

regardless of the mandatory language of the prison regulations, the inmate did not have a liberty

interest because his placement in administrative segregation did not constitute an atypical and

significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey

v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot

successfully claim that his due process rights were violated because "[p]rocess is not an end in

itself." *Olim*, 461 U.S. at 250.

Plaintiff's allegations do not support an inference that the duration of his sentence has been

affected by his placements in either administrative segregation or the START program. And,

typically segregation stays must extend for years before they are considered "atypical and

significant" such that a prisoner is entitled to due process protection. *See, e.g., Selby v. Caruso*,

734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v.

Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty

interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the

plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from

prison officials, implicates a liberty interest).

The few months of administrative segregation endured by Plaintiff is far short of the years-

long placements that are deemed atypical and significant. *Sealey v. Giltner*, 197 F.3d 578, 589–90

(2d Cir. 1999) (holding that 101 days in SHU confinement, though unpleasant and severe, was not

atypical and significant); *Jenkins v. Murray*, 352 F. App'x 608, 610 (3d Cir. 2009) (holding that

prisoner's three-month confinement in administrative segregation did not constitute an atypical or

significant hardship); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (holding that a six-

month stay in administrative segregation was not atypical and significant); *Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008) (holding that 12 months in administrative lockdown was not atypical and significant); *Finley v. Huss*, 102 F.4th 789, 813 (6th Cir. 2024) (noting that the prisoner's three months in administrative segregation, without more, was not atypical and significant and did not implicate a liberty interest); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997) (finding that a six–month term in administrative segregation was not "atypical and significant," without no discussion of the conditions in segregation); *Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996) (holding that placement of inmate in non-disciplinary segregation for three months did not create a liberty interest); *Ballinger v. Cedar Cnty. Mo.*, 810 F.3d 557, 563 (8th Cir. 2016) (holding that whether the duration in administrative segregation was three months, as the district court found, or one year, as the prisoner argued, it was not an atypical and significant hardship); *Shields v. Cline*, 829 F. App'x 321, 324 (10th Cir. 2020) (concluding that five months in administrative segregation was not atypical and significant). Under the authorities cited above, Plaintiff's allegations do not show that the conditions in either segregation or the START program constituted atypical or significant hardships.

Accordingly, Plaintiff has failed to state a due process claim upon which relief can be granted.

### D.    First Amendment Retaliation

The Court also construes Plaintiff's amended complaint to raise a First Amendment retaliation claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Id*. at 353 n.3. Plaintiff states only that he "wrote grievances and started speaking out about [his] situation." (Am. Compl., ECF No. 5, PageID.106.) Plaintiff fails to allege any facts to support an inference regarding the nature of his complaints.

Regardless, accepting, at this stage of the proceedings, that Plaintiff's grievances were not frivolous, the adverse actions he describes—denying food, hygiene opportunities, and outdoor activity—would likely deter a person of ordinary firmness from complaining by spoken or written word. Thus, Plaintiff has adequately alleged "adverse action."

Plaintiff's claim fails, however, at the third step. The only fact that Plaintiff offers that might support an inference that the protected conduct motivated the adverse action is that the conduct preceded the action. Although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), and *Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), with *Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Plaintiff never alleges the motivation of the adverse actors, he simply points out the sequence of the events. He does not even allege any facts to show the timing. It is impossible to determine whether the events were even temporally proximate. Plaintiff's allegations of retaliation are entirely conclusory. Plaintiff's "conclusory allegations of retaliatory motive," which are "unsupported by material facts," do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); Lewis v. Jarvie, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish

retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, Plaintiff has failed to state a First Amendment retaliation claim upon which relief may be granted.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

 This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   __March 7, 2025__          __/s/ Ray Kent_____
                                        Ray Kent
                                        United States Magistrate Judge

16